Gale PRIZEVOITS, Plaintiff–Appellant,

v.

INDIANA BELL TELEPHONE
COMPANY, Defendant–
Appellee.

No. 95–1813.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1995.

Decided Feb. 2, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied March 14, 1996.*

* Hon. Walter J. Cummings did not participate in      the vote for rehearing en banc.

C. Warren Holland, Michael W. Holland, Holland & Holland, Indianapolis, IN, David L. Rose, David M. Wachtel (argued), Rose & Rose, Washington, DC, for Plaintiff–Appellant.

Julia M. Blackwell, Julia F. Crowe, Kim F. Ebert (argued), Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, R. Anthony Prather, Indiana Bell Telephone Company, Indianapolis, IN, for Defendant–Appellee.

Before POSNER, Chief Judge, and ESCHBACH and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

This is an appeal from the dismissal of Gale Prizevoits' Title VII suit against the Indiana Bell Telephone Company. The first and last question we decide is whether we have jurisdiction of the appeal. The judgment of the district court having been entered on February 7, 1995, Prizevoits had until March 9 to file her notice of appeal. On February 17 her lawyer filed a motion to extend the time for filing a Rule 59(e) motion to alter or amend the judgment. The motion was improper, Rule 6(b) of the Federal Rules of Civil Procedure being explicit that the time for filing a motion under Rule 59(e) may not be extended. On March 13 the district judge denied the motion for an extension of time within which to file a Rule 59(e) motion. By then the time for filing the notice of appeal had expired; the improper motion had not, of course, extended the period for appealing. On March 22, Prizevoits' lawyer moved the district court for an extension of time within which to appeal. The motion was granted in an order reciting that "good cause" had been shown for Prizevoits' failure to file a timely appeal. The notice of appeal was finally filed on March 27. The appellee does not contend that the appeal is untimely.

Rule 4(a)(5) of the Federal Rules of Appellate Procedure empowers the district court, within the 30 days following the expiration of the 30-day period for filing the notice of appeal, to grant a brief extension (up to 10 days after the entry of the order granting the extension) "upon a showing of excusable neglect or good cause." As the Committee Note to the 1991 amendment explains, "good cause" was added to take care of the situation in which the appellant asks for the extension before the original 30 days are up. That of course is not this case, so the district judge should not have used the standard of good cause. *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 231 (7th Cir.1990); *Virella–Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451 (1st Cir.1995). But supposing that she thought "good cause" interchangeable with "excusable neglect," we are convinced that the decisions of this court interpreting the term forbade her to find *excusable* neglect. Prizevoits' lawyer had argued that having been retained recently he needed more than 10 days to prepare a Rule 59(e) motion and that once the motion for an extension of time within which to file that motion was made he had to wait and see what the district court did with it. These are transparently inadequate arguments. Rule 6(b) makes plain both that the 10-day limit on filing a Rule 59(e) motion cannot be extended, no matter how new the party's lawyer is, and that there was nothing to wait for, since the district court had no power to grant the motion. The federal rules are complex—a minefield for lawyers not experienced in federal practice—but Prizevoits' principal lawyer is a highly experienced federal litigator. He must know about Rule 6(b). An unaccountable lapse is not excusable neglect. "The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir.1985). For cases in our court affirming this principle, see *United States v. Dumont*, 936 F.2d 292, 294–95 (7th Cir.1991); *Albedyll v. Wisconsin Porcelain Co. Revised Retirement Plan*, 947 F.2d 246, 253 (7th Cir.1991); *Cange v. Stotler & Co.*, 913 F.2d 1204, 1212–13 (7th Cir.1990); *Parke–Chapley Construction Co. v. Cherrington*, 865 F.2d 907, 911–13 (7th Cir.1989); *Redfield v. Continental Casu-*

*alty Corp.*, 818 F.2d 596, 602 (7th Cir.1987). The term "excusable neglect" as used in Rule 4(a)(5) refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules. See, e.g., *id.* at 602; *Lorenzen v. Employees Retirement Plan, supra*, 896 F.2d at 232–34. None of these circumstances is present here.

We are mindful of the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 391, 113 S.Ct. 1489, 1496, 123 L.Ed.2d 74 (1993), holding that "excusable neglect" "is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." The Court was not talking about Rule 4(a)(5), but the tenor of its opinion is that the term bears the same or similar meaning throughout the federal procedural domain. See *id.* at 386–95, 113 S.Ct. at 1494–98. Six courts of appeals have so held with specific reference to Rule 4(a)(5). *Fink v. Union Central Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir.1995); *Reynolds v. Wagner*, 55 F.3d 1426, 1429 (9th Cir.1995); *Virella–Nieves v. Briggs & Stratton Corp., supra*, 53 F.3d at 454 n. 3; *United States v. Carson*, 52 F.3d 1173, 1180 (2d Cir.1995); *United States v. Clark*, 51 F.3d 42, 44 (5th Cir.1995); *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir.1994); see *Stutson v. United States*, — U.S. —, 116 S.Ct. 600, 133 L.Ed.2d 571 (1996) (per curiam). We may assume that they are right. It would make no difference to the outcome of the present case or in the standard applied by this court before the Supreme Court's decision. As our reference in the preceding paragraph to "plausible misinterpretations" should make clear, this court has never sought to confine Rule 4(a)(5) to "circumstances beyond the control of the filer," and indeed the Supreme Court in *Pioneer Investment Services* cited with approval our decision in *Lorenzen*, 507 U.S. at 387 n. 3, 113 S.Ct. at 1494 n. 3. In *Lorenzen* there was "confusion" concerning the scope of the applicable rule, and the lawyer's error could not be considered "egregious." 896 F.2d at 233. Here the rule is crystal clear, the error egregious, the excuses so thin as to leave the lapse not only unexcused but inexplicable. If there was "excusable" neglect here, we have difficulty imagining a case of inexcusable neglect. We do not think it can make a difference that no harm to the appellee has been shown. There is unlikely ever to be harm in the Rule 4(a)(5) setting, because the neglectful appellant has only 30 days after the expiration of his time for appealing in which to request relief. The word "excusable" would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm.

Since it would in our judgment have been an abuse of discretion for the district court to have found excusable neglect in this case, there is no need to remand for further consideration of the issue.

■ The only hitch is that the appellee has not challenged the district judge's finding of good cause. While objections to the subject-matter jurisdiction of a court, and therefore to our jurisdiction of this appeal, cannot be waived, it can be argued that findings, in the nature of findings of fact, upon which jurisdiction depends are conclusive upon the court if not challenged by a party. The precise argument was rejected, we think correctly, in *United Food & Commercial Workers Union v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 303–304 (2d Cir.1994), properly distinguishing our opinion in *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366–68 (7th Cir.1993), which merely holds that a party's change of mind about whether a prerequisite to jurisdiction is present is not conclusive.

■ A court is not required to conduct a searching inquiry into the truth of every uncontested jurisdictional allegation. If the plaintiff in a diversity suit alleges, and the defendant admits, that the defendant is incorporated in Delaware, the district judge is not required to run to *Moody's* to see whether it really is a Delaware corporation, or to insist on the production of a certified copy of the defendant's certificate of incorporation. But if the judge has reason to believe that he lacks jurisdiction he is not obliged, and indeed not permitted, to close his eyes and assume a jurisdiction that he doubts he has.

*In re Marchiando,* 13 F.3d 1111, 1114–15 (7th Cir.1994). The rule against obtaining federal jurisdiction by consent (*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Stockman v. LaCroix,* 790 F.2d 584, 587 (7th Cir.1986); *Minority Police Officers Ass'n v. City of South Bend,* 721 F.2d 197, 199 (7th Cir.1983)) would be ineffectual if parties by stipulating to jurisdictional facts could remove them entirely from judicial scrutiny as here contended. We made clear in *Marchiando* that if an affidavit attesting to a fact essential to the court's jurisdiction "contain[s] ... implausibilities such as would or should alert a judge to the likelihood that the affidavit was perjured or otherwise false or inaccurate," 13 F.3d at 1114–15, the judge must investigate further. "Parties cannot confer jurisdiction by consent, so Marchiando's failure to contest the state's affidavit would not have prevented the district judge from holding a hearing to determine the truth of the facts attested to in it." *Id.* at 1114.

Here the source of doubt about jurisdiction lies right on the surface, in "implausibilities" that we, responsible for policing our jurisdiction, could not be excused for overlooking. The jurisdictional statement filed by the appellant indicated that the notice of appeal had been filed after 30 days by virtue of an extension granted under Rule 4(a)(5) and attached the district judge's order, which on its face was dubious because it found "good cause" even though the motion for Rule 4(a)(5) relief had been filed after the expiration of the original period for appealing. A footnote to the order reveals that the "good cause" consisted in the filing of an unauthorized motion, the motion to extend the time for filing a Rule 59(e) motion. The rest of the details are supplied by the motion that Prizevoits had made to the district court for Rule 4(a)(5) relief. We do not have to look beyond the documents of record in order to discover that the conditions set forth in the rule for being allowed to take an untimely appeal have not been fulfilled. We would be exceeding our jurisdiction if we proceeded to decide the merits of the appeal.

APPEAL DISMISSED.

ESCHBACH, Circuit Judge, dissenting.

The appellant in this case, Prizevoits, failed to file a notice of appeal within the requisite 30–day period. As the court notes, however, district courts have power to grant a brief extension of time for filing a notice of appeal "upon a showing of excusable neglect or good cause." Fed.R.App.P. 4(a)(5). In her motion for extension of time to file notice of appeal, Prizevoits argued that the facts established excusable neglect. The district court granted the motion, finding "good cause to invoke the grace period provision of Appellate Rule 4(a)(5)...." We generally give deference to that finding. *Varhol v. National R.R. Passenger Corp.,* 909 F.2d 1557, 1563 (7th Cir.1990). Neither party challenges the district court's finding. Having satisfied the statutory prerequisites to its exercise of discretion, the district court was within its power to grant an extension of time for filing a notice of appeal. This court, therefore, has jurisdiction and may turn to the merits of the appeal. *In re Marchiando,* 13 F.3d 1111, 1115 (7th Cir.) (Posner, C.J.), *cert. denied, Illinois Dept. of the Lottery v. Marchiando,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). As we have previously stated, "[t]he danger of collusive conferral of *appellate* jurisdiction is slight; for why should the party that won below give his opponent a shot at reversal?" *Id.,* 13 F.3d at 1114 (emphasis in original).

We second-guess the district court's finding only when "the party's excuse is so far afield (for example, counsel simply forgetting on day thirty to file the notice) that granting the extension would be a patent abuse of discretion." *Varhol,* 909 F.2d at 1564. The majority posits that it would have been an abuse of discretion for the district court to have found excusable neglect in this case because the decisions of this court interpreting the term "excusable neglect" foreclose any possibility of such a finding. There are two problems with the majority's position. First, the district court's finding was not an abuse of discretion in the light of the facts of

this case. Second, although we do not have the benefit of briefing by the parties on this or any of the other issues addressed in the majority's opinion, it is probable that this court's decisions interpreting the term "excusable neglect" have been superseded by the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), which makes clear that the determination of whether there is excusable neglect is an equitable determination.

The majority supports its position that the district court abused its discretion by declaring that "[a] footnote to the order reveals that the 'good cause' consisted in the filing of an unauthorized motion, the motion to extend the time for filing a Rule 59(e) motion." The majority's statement is incorrect. The footnote to which the majority refers more likely indicates that the district court *rejected* Prizevoits's simple "filing of an unauthorized motion" as grounds for excusable neglect. In footnote one of its order granting Prizevoits's motion, the district court stated: "The third paragraph of the plaintiff's motion is troubling because in it the plaintiff still does not seem to recognize that the motion for an extension of time to file a Rule 59 motion was a nullity from the outset." A review of Prizevoits's motion indicates that there were several reasons that she "neglected" to file a timely notice of appeal: Prizevoits had retained new counsel between the time the parties briefed and argued her motion for summary judgment and the time the court issued its judgment; Prizevoits's new attorney did not receive all of the materials pertaining to her case until after the time for filing a Rule 59 motion had passed; Defendant Indiana Bell had consented to the extension of time for filing a Rule 59 motion; and Prizevoits's motions were lost or delayed in the mails. In addition, it is clear that the defendant was on notice of Prizevoits's intention to pursue the case. The district court was aware of these facts and all of the other circumstances surrounding Prizevoits's failure to file a timely notice of appeal.

In the light of these facts we cannot say that the district court abused its discretion, even under our old decisions. Moreover, the Supreme Court's decision in *Pioneer* makes it even less likely that the district court abused its discretion. In *Pioneer,* the Court held that attorney negligence may, in certain circumstances, constitute "excusable neglect," considerably liberalizing its meaning and prescribing a new analytical test. The Court held that the plain meaning of the word "neglect" indicates that Congress contemplated that courts could "accept late filings caused by inadvertence, mistake or carelessness...." *Id.* at 388, 113 S.Ct. at 1495. The majority, however, chooses not to address the impact of *Pioneer* on our past decisions. Given the difference in tone between *Pioneer* and our past decisions, this choice is a dubious one.

The Supreme Court went on to add that whether such "neglect" is "excusable" is an equitable determination, "taking account of all relevant circumstances surrounding the party's omission...." *Id.* at 395, 113 S.Ct. at 1498. These circumstances include the risk of prejudice to the moving party, the extent of the delay, and its potential effect on judicial proceedings, the reason for the delay and whether the moving party acted in good faith. *Id.* This determination should be made in the first instance by the district court, the court which is aware of all of the circumstances in any particular case. The facts of this case negate the majority's position that the district court abused its discretion. *Cf. City of Chanute, Kansas v. Williams Nat. Gas Co.,* 31 F.3d 1041, 1044–47 (10th Cir.1994) (finding of "excusable neglect" not abuse of discretion even though tardiness of notice of appeal due to appellants' failure to comprehend plain language of Fed.R.App.P. 3(c)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995); *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 206 (5th Cir.1993) (same). If the majority still wishes to second-guess the district court, it should do so by remanding the case for a more detailed opinion. I respectfully dissent.