**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 27, 2011[*]
Decided August 23, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-1794

| | |
|---|---|
| JERAMEY R. BROWN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 07-117-PMF |
| ROBERT HERTZ, et al., *Defendants-Appellees*. | Philip M. Frazier, *Magistrate Judge*. |

**O R D E R**

Jeramey Brown, currently an Illinois state inmate, appeals (1) the grant of summary judgment for various county and state employees in this action under 42 U.S.C. § 1983 alleging that he suffered retaliation while a pretrial detainee at the county jail in Madison County, and (2) the denial of his motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). This case has a convoluted procedural history, and at its center is a dispute over a purported instance of lost mail—Brown's response to the county employees' summary-judgment motion. We affirm in part, reverse in part, and remand for further

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

proceedings.

Brown filed this suit in 2007, claiming that jail employees ("county employees") retaliated against him for a previous lawsuit by placing him in isolation, preventing him from accessing the law library, and interfering with his access to legal mail. He also sued officials at the Illinois Department of Corrections ("state employees") for failing to respond to his grievances about the retaliation.

At several instances early in the proceedings, Brown asked the court to recruit counsel. The first request was denied by the district judge who was originally assigned the case; the judge deemed Brown's claims "not that factually complex" and considered Brown—based on the quality of his pleadings—sufficiently competent to litigate the case. A second and third request—which followed disruptions to Brown's access to legal material due to a prison lockdown and time spent in disciplinary segregation—were later denied by the magistrate judge, who by 2008 had taken over the case with the parties' consent.

A few months later, the county employees—in December 2009—and state employees—in January 2010—moved separately for summary judgment. The county employees produced records relating to Brown's detention which, in their view, showed that jail staff permitted him to use the library, isolated him for proper reasons, and never read or photocopied his legal mail. The state employees, for their part, submitted documents justifying their decisions not to respond to Brown's grievances, and they asserted the defense of qualified immunity. Brown was given until February 8 to respond to the county employees' motion for summary judgment and until March 3 to respond to the state employees' motion.

At this point the pace of the proceedings accelerated (and the chronology of events becomes confusing). For purposes of this appeal, much of the confusion surrounds Brown's purported response to the summary-judgment motion filed by the county employees. On February 17, the magistrate judge—having received from Brown only declarations from two prisoners to bolster Brown's account of retaliation by the county employees—issued a minute order stating that he would construe these documents as Brown's response to summary judgment. That same day, the judge received from Brown a "motion for leave to supplement plaintiff's response to defendants' motion for summary judgment," in which Brown alluded to his "timely filed" response to the county employees' summary-judgment motion.

On February 18, Brown filed his response to the state employees' motion for summary judgment, noting in passing that he had already filed a response to the county employees' motion.

By February 21, Brown, apparently had received the judge's February 17 minute order because on that day, he mailed a document to the court entitled "Plaintiff's Response to Magistrate Judge Phillip M. Frazier's February 17, 1010 Order."  In that submission, Brown asserted that he had, in fact, previously mailed a timely formal summary judgment response to the court, that is, something more than the two subsequently mailed prisoner declarations. He supported his assertion with a receipt of postage paid on a three-pound package mailed to the courthouse on February 8, as well as an affidavit attesting that the package contained his summary-judgment response.

On February 24, the magistrate judge—apparently not having yet received Brown's February 21 response because it was not entered on the docket until later the same day—granted summary judgment to the county employees. The judge explained that Brown was "fully aware of his obligation to file a response to a Motion for Summary Judgment, as well as the consequences of failing to do so." The judge noted that notice of such consequences had already been provided by the state employees on January 29 (the county employees provided no such notice), and further, Brown was well-versed from prior litigation in filing a response. The judge added that his role was not to "scour the record" in search of supporting evidence, and the two prisoners' declarations here could not defeat summary judgment.

A week later, Brown sought postjudgment relief on grounds that his formal summary judgment response must have been lost in the mail, and that the magistrate judge erred by failing to acknowledge as much. With this filing, he also submitted a receipt of payment from the Illinois Department of Corrections for copies of the response to summary judgment he filed in this case.

The magistrate judge construed this filing as arising under Rule 59(e) and denied it. Brown produced no newly discovered evidence, the judge said, and further, failed to establish that any manifest error of law or fact had occurred. And given Brown's experience filing "voluminous . . . responsive pleadings" in other litigation in the Southern District of Illinois, the judge was "unconvinced" that Brown had drafted and mailed any response.

The magistrate judge also granted summary judgment for the state employees, finding them shielded by qualified immunity in the absence of any evidence that they clearly violated Brown's constitutional rights.

Brown limits his appeal only to the proceedings involving the county employees (he makes no argument as to the state employees, so he has waived any challenge to the grant of summary judgment in their favor). As for his case against the county employees, he

argues that the magistrate judge's refusal to allow him an opportunity to refile his lost summary-judgment response was an abuse of discretion. In support, he points to a similar set of circumstances in one of his other prisoner-rights cases that had an entirely different outcome. In that case, also involving his claim that his summary-judgment response was lost, a different judge gave him "the benefit of the doubt" and permitted refiling. *See Brown v. Unfried*, 3:08-cv-109 (S.D. Ill. Mar. 5, 2010), ECF No. 57. Brown asserts that he used the same envelope to mail the summary-judgment responses in both cases.

Although we review denials of postjudgment motions for abuse of discretion, *see Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006), a court's failure to explain its decision, when the reasoning is not apparent from the record, undermines the sense that discretion was exercised properly, *see Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010); *Montano v. City of Chicago*, 375 F.3d 593, 601 (7th Cir. 2004). The magistrate judge's decision here lacked sufficient rationale. He dismissed as "unconvinc[ing]" Brown's claim of having prepared and mailed his summary-judgment response, but nowhere did he substantiate that conclusion, apart from referencing Brown's other litigation activity. Lost mail is one of the circumstances that we have identified as constituting excusable neglect for purposes of a postjudgment motion. *See Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133-34 (7th Cir. 1996); *see also Harrington*, 433 F.3d at 546 (approving of district court's decision to evaluate a 59(e) motion as one under 60(b), which covers excusable neglect). The judge, however, glossed over the inquiry; he never acknowledged the receipt showing that Brown mailed a package to the court on the deadline for filing his summary-judgment response. Nor did the judge acknowledge references that Brown had made in two prejudgment filings to having submitted a summary-judgment response. Brown did about as much as he could to prove that he mailed a response (he repeatedly states that he didn't have extra copies), and the judge did not say why these efforts were insufficient. We therefore reverse the denial of the Rule 59(e) motion and remand the case so that Brown has an opportunity to refile his response.

We see no reason, however, why Brown's claims against defendants John Gilbert and John McGuire, both assistant state's attorneys employed by Madison County, should continue. These defendants had very limited involvement in Brown's situation. Gilbert provided legal advice to jail employees related to Brown's grievances, and McGuire responded to Brown's requests for jail records. Neither defendant was personally responsible for any deprivation of Brown's rights, and thus neither could be held liable under § 1983. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Brown also challenges the magistrate judge's denial of his motion to compel discovery of prison records that, in his view, could have helped him prove retaliation. The

judge determined that this request was moot after he granted the county employees' motion for summary judgment. Brown's request for documents appears to be overly broad and not reasonably calculated to lead to the discovery of admissible evidence. *See* FED. R. CIV. P. 26(b)(1). But we need not decide this issue because the district court will have an opportunity to revisit it on remand.

Brown lastly argues that he was wrongly denied counsel because this case required access to more legal resources than were available to him. Relatedly, he suggests that counsel would somehow have made the county employees more responsive to his discovery requests and avoided a situation in which his mail was lost. When reviewing a denial of a request to recruit counsel, we ask whether the district court reached a reasonable decision after considering, among other things, the complexity of a plaintiff's claims and his ability to litigate his case. *See Pruitt v. Mote*, 503 F.3d 647, 654, 658 (7th Cir. 2007) (en banc). Both the district judge and magistrate judge reasonably found that Brown's claim was not complex and that he was competent to litigate his case, as reflected by his pleadings and his ability to raise his concerns to jail officials. The magistrate judge additionally concluded that Brown did not need counsel during pretrial proceedings because he possessed personal knowledge of the facts and had sufficient access to legal materials and postal services. This analysis meets the standard set forth in *Pruitt*.

The judgment of the district court is AFFIRMED with respect to the state employees and county employees Gilbert and McGuire, REVERSED with respect to the other county employees, and the case is REMANDED for further proceedings consistent with this order.