# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 08-6025

_____

| | | |
|---|---|---|
| In re: President Casinos, Inc., | * | |
| | * | |
| Debtor | * | |
| | * | |
| Alma Jackson, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Creditor - Appellant | * | Eastern District of Missouri |
| | * | |
| v. | * | |
| | * | |
| President Casinos, Inc., | * | |
| | * | |
| Debtor - Appellee | * | |

_____

Submitted: November 7, 2008
Filed: December 1, 2008

_____

Before FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Creditor Alma Jackson appeals from the Bankruptcy Court's[1] Order denying her *Motion for Relief from Order Pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure as to the Order Relating to Post Petition Personal Injury*

---

[1] The Honorable Kathy A. Surratt-States, Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Missouri.

*Claims Identified in Omnibus Objection dated May 30, 2007* (the "Rule 9024 Motion"). In sum, Jackson seeks relief from the Court's denial of her post-petition personal injury claim against the Debtor because she did not timely file certain documents as required by Court Order. Because the Bankruptcy Court did not abuse its discretion in finding that Jackson failed to demonstrate excusable neglect under Rule 60(b),[2] we affirm.

## FACTUAL BACKGROUND

On June 20, 2002, President Casinos, Inc. ("PCI") and its wholly-owned subsidiary, President Riverboat Casino-Missouri, Inc. ("PRC-MO"), and several other affiliated companies (collectively, the "Debtors") filed voluntary Chapter 11 bankruptcy petitions. The cases are being jointly administered, and the Debtors continue to operate as debtors-in-possession. PCI serves as the Distribution Trustee under a Distribution Trust established pursuant to the PRC-MO Chapter 11 Plan, which became effective on December 20, 2006. In its role as Distribution Trustee, PCI has the authority to, among other things, object to disputed claims against the PRC-MO estate and prosecute or settle such objections.

Jackson is the holder of a postpetition claim against PRC-MO based on an alleged personal injury she sustained at PRC-MO's premises (the "Jackson Claim"). On March 22, 2007, PCI, in its role as Distribution Trustee, filed a *First Omnibus Objection to Administrative (Post-Petition) Claims filed Against President Riverboat Casino-Missouri, Inc.* (the "Omnibus Objection"). The Jackson Claim was among those claims objected to in the Omnibus Objection, on the basis that PRC-MO denied any liability for the claim. The parties do not dispute that the Jackson Claim was subject to the Bankruptcy Court's *Order Establishing Mediation Procedures Applicable to Personal Injury and Tort-Related Claims* (the "Mediation Procedures

---

[2] Fed. R. Civ. P. 60(b), made applicable to this bankruptcy case pursuant to Fed. R. Bankr. P. 9024.

Order"), which required them to refer the underlying personal injury claim to mandatory mediation. In compliance with the Mediation Procedures Order, on or about March 22, 2007, PCI served Jackson with a *Notice of Objection to Personal Injury Claim* and *Notice of Proposed Mediator and Opportunity to Object* (the "Notice"), along with a copy of the Mediation Procedures Order, which, *inter alia*, required Jackson to submit a Mediation Statement within forty-five days.

On April 30, 2007, the Bankruptcy Court entered an *Order on Omnibus Objection to Administrative (Post-petition) Claims Filed Against President Riverboat Casino-Missouri, Inc.* (the "Omnibus Order"), which reiterated that Jackson's Claim was in mediation and that Jackson was required to file her Mediation Statement no later than May 7, 2007, or risk dismissal of the Claim. When Jackson failed to submit a Mediation Statement by the May 7, 2007 deadline, the Bankruptcy Court entered, on May 30, 2007, an *Order Relating to Post-Petition Personal Injury Claims Identified in Omnibus Objection* (the "PI Claims Order") in which the Court disallowed the Jackson Claim in its entirety for her failure to submit a Mediation Statement and otherwise timely prosecute her claim against the estate. Jackson does not dispute that her Mediation Statement was due by May 7, or that she failed to comply with that deadline.

On June 8, 2007, Jackson filed a timely Motion to Reconsider the PI Claims Order (the "Motion to Reconsider"), stating briefly that her attorney, through oversight, had failed to deliver a timely Mediation Statement to the mediator, that the attorney "learned of the oversight upon returning from emergency appendectomy," and that the Mediation Statement had been hand-delivered to the mediator's office on June 4, 2007. PCI objected to the Motion to Reconsider. On July 10, 2007, the Bankruptcy Court entered an Order denying the Motion to Reconsider. Jackson did not appeal from the Order denying the Motion to Reconsider, or the PI Claims Order denying her Claim.

Rather, on August 29, 2007, Jackson filed the instant Rule 9024 Motion, accompanied by an Affidavit of Jackson's attorney, Michael McGlynn. In essence, Jackson seeks relief from the PCI Claims Order and the Order denying the Motion to Reconsider, and asks that she be allowed to file the Mediation Statement out of time, based on excusable neglect under Rule 60(b).

According to Mr. McGlynn's Affidavit, he practices in a three-person law firm where he is solely responsible for his own files and states that he "had no back-up to catch the oversight," apparently referring to his missing the deadline for filing the Mediation Statement. He further states, "I had emergency appendectomy surgery at Barnes Hospital, and the day I returned to the office I learned that an order was entered striking the claim due to the failure to tender to the mediator the mediation materials (medical records, bills, theory of the case)." He also says that he was unaware of any concern by the mediator or attorney for the Debtor that the materials had not been received, or of any request to strike the claim. McGlynn further states that "[t]here was an oversight in that the date to present the materials to the mediator was not calendared, and [he] was unaware of any concern until the day [he] returned to [his] office from surgery." He says that he immediately collected the materials and hand-delivered them to the mediator that same day, June 4.

PCI opposed the Rule 9024 Motion and, on July 3, 2008, the Bankruptcy Court denied it. Jackson argues that the Bankruptcy Court erred in doing so.

STANDARD OF REVIEW

We review a determination to set aside a judgment under Rule 60(b) for abuse of discretion.[3]

---

[3] *Watkins v. Lundell*, 169 F.3d 540, 543-44 (8th Cir. 1999).

4

Rule 60(b) provides, in relevant part, that, on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect." The Order from which Jackson ultimately seeks relief is the PI Claims Order denying her Claim, asserting that her attorney's failure to timely file the Mediation Statement was a result of excusable neglect. As the Debtor contends, however, Jackson had the opportunity to argue that the neglect in filing the Mediation Statement was excusable when she first moved for reconsideration of the PI Claims Order, and, therefore, this Rule 9024 Motion is an improper attempt to appeal from that Order or the Order denying her Motion to Reconsider. An appeal of the denial of a Rule 60(b) motion does not raise the underlying judgment for consideration and review and cannot substitute for a timely appeal from that judgment.[4] If an alleged error could have been corrected by appeal, a motion for reconsideration or relief must be made within the time for appeal.[5] As a result, to the extent that Jackson contends that the Bankruptcy Court should have allowed her to file her Mediation Statement out of time, she should have raised that issue through a timely appeal of the Order denying her Motion to Reconsider. Further, through her Rule 9024 Motion, Jackson simply expands upon the same argument she made in the Motion to Reconsider the denial of her Claim – *i.e.,* that she should be allowed to file the Mediation Statement out of time due to her attorney's illness – which is another impermissible use of Rule 60(b).[6] As a result, the

---

[4] *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004).

[5] *United States v. Mosbrucker*, 340 F.3d 664, 665 (8th Cir. 2003) (Rule 60(b) provides for relief only under exceptional circumstances and is not intended to substitute for a timely appeal) (citation omitted).

[6] *Arnold v. Wood*, 238 F.3d 992 (8th Cir. 2001) (denial of motion for relief from judgment was not abuse of discretion where motion largely reasserted contentions made in litigant's earlier motions); *Carpenters Dist. Council of Kansas City Pension Fund v. Graceland Indus., Inc.*, 140 Fed. App. 637, 2005 WL 1907061 at *1 (8th Cir. 2005)

Bankruptcy Court could have properly denied the Rule 9024 Motion on those grounds.

Nevertheless, although the Bankruptcy Court did not need to address the merits of the Rule 9024 Motion, the Court did so, finding that Jackson had not proven excusable neglect in failing to file the Mediation Statement by the deadline. As Jackson points out, "Congress plainly contemplated that the courts would be permitted to accept late filings caused by inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond the party's control."[7]  "[E]xcusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."[8]  "The determination as to whether neglect is excusable is an equitable one, taking into account all relevant circumstances surrounding the party's omission."[9]  However, relief under Rule 60(b) is an extraordinary remedy.[10]  Factors to consider in this determination include (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within

---

(unpublished) ("The purpose of Rule 60(b) relief is not to afford the parties an opportunity to reargue the merits of their case."); *F.D.I.C. v. United Pacific Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998) ("Rule 60(b) is not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument.") (citation and internal quotation marks omitted).

[7]  *Pioneer Investment Services Company v. Brunswick Associates L.P.*, 507 U.S. 380, 381, 113 S.Ct. 1489, 1490-91, 123 L.Ed.2d 74 (1993).

[8]  *Id.* 507 U.S. at 394, 113 S.Ct. at 1497 (internal quotation marks omitted).

[9]  *In re Payless Cashways, Inc.*, 230 B.R. 120, 138 (B.A.P. 8th Cir. 1999) (citing *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1489).

[10]  *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004).

the reasonable control of the movant; and (4) whether the movant acted in good faith.[11]

In sum, the Bankruptcy Court found that granting the Rule 9024 Motion posed no danger of prejudice to the Debtor because doing so would simply permit Jackson to mediate her claim, which was the process that the Debtor preferred for the personal injury claimants. The Court also found that the length of the delay, less than ninety days from the entry of the PI Claims Order to the filing of the Rule 9024 Motion, was minimal, and that Jackson had acted in good faith, all factors weighing in favor of granting the Rule 9024 Motion.

However, the Court also found that allowing Jackson to prevail on the Rule 9024 Motion by making essentially the same argument made in the Motion to Reconsider would have a negative impact on judicial economy. In other words, the Court found that it would be inherently unfair to the Debtor to give Jackson a second try at arguing that the Jackson Claim should not be disallowed.

Further, noting that the third factor, *i.e.*, the reason for the delay, is the most important factor considered by the courts,[12] the Bankruptcy Court found Mr. McGlynn's explanation to be insufficient to warrant a finding of excusable neglect. As Jackson suggests, and as the Bankruptcy Court said, illness of counsel may be sufficient for a finding of excusable neglect, but the illness must be of "such character and magnitude that counsel was both physically and mentally incapacitated during the crucial period of time."[13]

---

[11] *Id.*

[12] *In re Gehl*, 324 B.R. 756, 759 (Bankr. N.D. Iowa 2005).

[13] *Id.* (*citing Gibbons v. U.S.*, 317 F.3d 852, 855 (8th Cir. 2003)).

No one disputes that Mr. McGlynn had an emergency appendectomy at some point around the relevant time period. However, even when he filed his Affidavit in support of the Rule 9024 Motion, Mr. McGlynn gave the Bankruptcy Court no details concerning his illness, such as the date when surgery occurred or how long he was incapacitated as a result of the illness. He does not even say whether the appendectomy occurred before or after the May 7 deadline for filing the Mediation Statement.[14] As the Bankruptcy Court said, Mr. McGlynn had forty-five days in which to file the Mediation Statement, and "[t]he fact that [he] became ill does not excuse the period of time when [he] was not ill."[15] Particularly given the lack of specificity as to his illness, the Bankruptcy Court did not abuse its discretion in finding that Mr. McGlynn failed to show that his illness constituted excusable neglect.

Jackson cites *Islamic Republic of Iran v. Boeing Company*[16] in support of her argument that her attorney's illness constitutes excusable neglect. In that case, the Ninth Circuit affirmed the district court's finding that counsel's diarrhea, vomiting and five-pound weight loss over a short period, coupled with the attorney's secretary's illness, amounted to excusable neglect for failing to timely file a notice of appeal. Jackson suggests that her attorney's appendicitis is far more serious than the illness described in that case. That may have been true, and, if so, the Bankruptcy Court may have so found when initially presented with the Motion for Reconsideration, but Mr. McGlynn provided the Bankruptcy Court with almost no information about his illness.[17] Moreover, Mr. McGlynn also concedes that his missing the deadline was,

---

[14] Indeed, Mr. McGlynn indicates in his Affidavit that he returned to his office from the surgery around June 4, which was when he discovered that the Jackson Claim had been disallowed and he hand-delivered the materials to the mediator.

[15] *Id.* (*citing Gibbons v. U.S.*, 317 F.3d at 855).

[16] 739 F.2d 464 (9th Cir. 1984).

[17] *Accord Gibbons v. U.S.*, 317 F.3d at 855 (finding no excusable neglect, in part because the attorney's affidavit contained no specific information as to the nature of her

at least in part, due to an "oversight," namely, that he had not calendared it. In view of the fact that relief under Rule 60(b) is an extraordinary remedy,[18] we cannot say that the Bankruptcy Court's determination that Mr. McGlynn's explanation did not meet the standard for excusable neglect was an abuse of discretion.[19]

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's denial of Jackson's Rule 9024 Motion was not an abuse of the Court's discretion. The Order denying Jackson's *Motion for Relief from Order Pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure as to the Order Relating to Post Petition Personal Injury Claims Identified in Omnibus Objection Dated May 30, 2007*, is, therefore, AFFIRMED.

---

illness, treatment, and/or rehabilitation).

[18] *Hunter v. Underwood*, 362 F.3d at 475.

[19] *See, e.g., Gibbons v. U.S.*, 317 F.3d at 855 (finding no excusable neglect, in part because the attorney failed to take appropriate measures for the administration of her cases upon her realization that her illness would preclude her from personally attending to them); *InvisioNet Computer Serv., Inc. v. ECS Funding LLC*, 288 B.R. 163, 165-66 (D. Me. 2002) (finding no excusable neglect when counsel failed to calendar a deadline).